```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    --------------------------------X
                                     :
4    YEKUSIEL SEBROW, et al.,        :
                                     :   11-CV-00616 (ENV)
5              Plaintiffs,           :
                                     :
6                   v.               :
                                     :   225 Cadman Plaza East
7    SHAPIRO, DICARO & BARAK, LLP,   :   Brooklyn, New York
       et al.,                       :
8                                    :   November 28, 2011
                    Defendants.      :
9    --------------------------------X

10              TRANSCRIPT OF CIVIL CAUSE FOR HEARING
                     REGARDING INTERROGATORIES
11           BEFORE THE HONORABLE RAMON E. REYES, JR.
                  UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:        ABRAHAM KLEINMAN, ESQ.
14                             Kleinman, LLC
                               626 RXR Plaza
15                             Uniondale, New York  11556-0626

16   For the Defendant:        CHRISTOPHER KENDRIC, ESQ.
                               Goldberg Segalla, LLP
17                             200 Old Country Road
                               Suite 210
18                             Mineola, New York  11501

19

20   Court Transcriber:        RUTH ANN HAGER
                               TypeWrite Word Processing Service
21                             211 N. Milton Road
                               Saratoga Springs, New York 12866
22

23

24

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

1   (Proceedings began at 10:17 a.m.)

2         THE CLERK:  -- for discovery conference, docket

3   number 11-CV-00616, <u>Sebrow v. Shapiro, Dicaro & Barak, LLP</u>.

4         Counsel for plaintiff, please state your name for

5   the record.

6         MR. KLEINMAN:  Good morning, Your Honor.  Abraham

7   Kleinman for the Sebrows.

8         THE COURT:  Counsel for the defendant?

9         MR. KENDRIC:  Good morning, Your Honor.  Christopher

10   Kendric, Goldberg Segalla, representing the defendant.

11         THE COURT:  Good morning.  Okay.  You gave Miriam

12   something.

13         MR. KLEINMAN:  I did, Your Honor.

14         THE COURT:  This looks like it was filed on ECF or

15   at least -- not on ECF but in the courtesy copy that I got.

16         MR. KLEINMAN:  What I gave Miriam I fabricated over

17   the weekend and --

18         THE COURT:  Fabricated?

19         MR. KLEINMAN:  I assembled and I know that I didn't

20   file it by ECF and, therefore, it was not filed by ECF.  It

21   was assembled for the purpose of making it easy to go through

22   the discovery today, a little more comprehensive on the

23   issues --

24         THE COURT:  All right.

25         MR. KLEINMAN:  -- that was presented --

3

1          THE COURT:  Okay.  All right.

2          MR. KLEINMAN:  -- earlier.

3          THE COURT:  What I did, as Mr. Kleinman can probably

4  tell you, Mr. Kendric, is go through these question by

5  question because in another conference in a case brought by

6  the Sebrows I attempted to render rulings only to be told by

7  defense counsel in that case, wait, wait, wait, hold on.

8  That's a different case.  So, in other words, I thought that

9  other case was this case when I had them on the telephone

10  call. I said, okay, I'm going to go through all the responses

11  one by one and the defense counsel was caught unawares because

12  it wasn't his case.  But as I go through these you can say

13  whatever it is you want, but I have at least tentative rulings

14  on each of the objections.

15          Interrogatory number one, the answer looks fine to

16  me.

17          MR. KLEINMAN:  May I be heard on interrogatory

18  number one, Your Honor?

19          THE COURT:  Go ahead.

20          MR. KLEINMAN:  Since we last met, Judge Schack has

21  found defendant's firm in a similar case to this and to quote

22  him -- I'd rather not misquote him -- is that he dismissed the

23  underlying foreclosure and found them sanctioned for

24  essentially bringing a lawsuit with no basis to bring the

25  lawsuit and that was HSBC Bank USA N.A. v. Tire [Ph.] and

4

1  defendants had filed an appeal.

2          In his decision finding them had in frivolous

3  conduct having brought the foreclosure, the judge decided in

4  Bank of New York v. Silverberg, which has changed the entire

5  specter of foreclosures -- what the Court found in Bank of New

6  York v. Silverberg was that MERS cannot be a plaintiff.  MERS

7  has no right to assign.  MERS is nobody and Bank of New York

8  v. Silverberg, they said, we are well aware -- the Court said,

9  we're well aware that 60 percent of mortgages go through --

10          THE COURT:  What does that have to do with the legal

11  name and business address of all persons who own a claim --

12  who own or claim to own any legal or beneficial interests in

13  the plaintiffs' loan at the present time?

14          MR. KLEINMAN:  Because there's no possible way that

15  JPMorgan Chase can own this loan based on defendant's very own

16  documents, just not possible.

17          THE COURT:  Then why does it matter what they say?

18          MR. KLEINMAN:  If that's their position that it

19  doesn't matter what they say, I guess I feel --

20          THE COURT:  Well, you know, it -- if the documents

21  say that JPMorgan Chase doesn't own the mortgage that's an

22  issue of fact, so if they in a response to an interrogatory

23  say that JPMorgan owns the mortgage what difference does it

24  make?  I mean, what's your trying to do with this

25  interrogatory is get them to change their legal position on

5

1  who was the owner of the mortgage, not you, but their -- you

2  know, but you see what I'm saying?  The answer is the answer.

3          MR. KLEINMAN:  Which would be fine if it wasn't upon

4  information and belief.  If you're bringing foreclosures

5  against people you need to know who the creditor is.

6          MR. KENDRIC:  Your Honor --

7          THE COURT:  So the words "upon information and

8  belief," that's what you're --

9          MR. KLEINMAN:  Right.  If it's the creditor, say it

10  loud and proud.

11          MR. KENDRIC:  I don't know if we even want to go

12  down this road, Judge.  Mr. Kleinman may or may not be aware

13  of the fact that my firm represented Shapiro, Dicaro in the

14  follow-up to Judge Schack's decision, the decision that the

15  gentleman read from.  There was an evidentiary hearing held as

16  to whether Shapiro, Dicaro should or should not be sanctioned

17  in some forum and it was found after a full hearing that there

18  was no basis for sanctions.

19          Now, just -- I just lay that out for your

20  consideration because --

21          THE COURT:  It doesn't matter --

22          MR. KENDRIC:  I understand.

23          THE COURT:  -- what Judge Schack did or didn't do.

24          MR. KENDRIC:  Yes.

25          THE COURT:  I mean, I'm looking at a specific

1  interrogatory and an answer and try to decide whether it's

2  efficient or not.

3          MR. KENDRIC:  I understand, Your Honor.  My only

4  responsive comment with respect to adding the words "upon

5  information and belief" is that where we believed something to

6  be accurate we said as much.  Where we were less than certain,

7  we began our interrogatory response by saying "upon

8  information and belief" and plaintiffs' counsel found fault

9  with that.  It's almost as if he wants it both ways.  He wants

10  something etched in stone and if we can't give it to him

11  etched in stone, then he attacks us for being less than

12  forthcoming with the Court.

13          THE COURT:  Doesn't this response actually help you

14  in the lawsuit?  They don't know.  It's upon information and

15  belief so that then --

16          MR. KLEINMAN:  I'm willing to adapt --

17          THE COURT:  You know --

18          MR. KLEINMAN:  I'm willing to adapt to

19  defendant's --

20          THE COURT:  Don't fight fights unless you absolutely

21  have to.

22          MR. KENDRIC:  Fair enough.

23          THE COURT:  Interrogatory number one is fine.

24  Interrogatory number two is fine.  Interrogatory number three.

25  Why can't you answer that?  Isn't it -- I mean, isn't this --

1  either they are or they aren't and shouldn't -- is there a

2  list somewhere that you can look at?

3          MR. KLEINMAN:  I have it before them if they would

4  like it, Judge.

5          MR. KENDRIC:  Well, what would -- we're revisiting

6  the first issue, then.  We can do it upon information and

7  belief based upon public documents.  Do we know?

8          MR. KLEINMAN:  Your Honor, it's not a question of

9  being cute or being -- or trying to, you know, phrase and

10 answer it a certain way.  Do we know?  We don't know.  Can we

11 say upon information and belief based upon the document?  We

12 absolutely can.

13         MR. KENDRIC:  So --

14         THE COURT:  But you didn't say it upon information

15 and belief.  You said it can be verified.  It -- whenever

16 someone -- whenever someone says, hey, it's publicly available

17 information, yeah, so fine.  Just give them the answer.  So in

18 some degree it is gamesmanship.  It is game playing and

19 parties do this all the time and it's annoying.

20         MR. KLEINMAN:  Understood, Judge.

21         THE COURT:  If it is, just say it, you know.

22         MR. KLEINMAN:  So the answer to number three --

23         THE COURT:  All right.

24         MR. KLEINMAN:  -- Your Honor, interfaces with the

25 answer to number two because First Financial Equities doing

8

1  business as The Mortgage Doctors' licensed mortgage banker was

2  revoked and the date of --

3          THE COURT:  What --

4          MR. KLEINMAN:  -- the revocation is May 20, 2009.

5          THE COURT:  So they -- when First Financial

6  Equities, Inc., originated the mortgage -- or originated the

7  note, they were not a licensed mortgage broker?

8          MR. KLEINMAN:  No.  I think on the date of the

9  assignment of mortgage, which is March 27 --

10         THE COURT:  2010.

11         MR. KLEINMAN:  -- 2010, Margaret Dalton, Vice

12 President of First Financial Equities, Inc., through MERS made

13 this assignment of mortgage --

14         THE COURT:  To?

15         MR. KLEINMAN:  -- JPMorgan Chase.  What are you

16 talking about?  And the license was revoked.  So it goes back

17 to number two, identify the transfers.  The documents you've

18 given me are false on its face and the judge in JPMorgan

19 Acquisition Corp. v. Richard Simmons, Judge Murphy said --

20         THE COURT:  So the documents that you're citing to

21 now were documents given to you by the defendants?

22         MR. KLEINMAN:  No.  I went and got them on my own.

23 Margaret Dalton is a known robo signer.

24         THE COURT:  Okay.

25         MR. KLEINMAN:  She signs for 30, 40, 50 --

9

1          THE COURT:  Why not bring a summary judgment motion?

2          MR. KLEINMAN:  That's --

3          THE COURT:  At this point.

4          MR. KLEINMAN:  -- a state court decision that the

5    state court lawyer doesn't want to do at this juncture.  But

6    for purposes of in this case having a lawyer file foreclosure

7    and having that foreclosure signed under penalty of perjury

8    that he knows that -- he knows the case and to give an

9    assignment of mortgage of Margaret Dalton, who we'll see later

10   in discovery they have no clue who Margaret Dalton is but the

11   judge does.

12         THE COURT:  Well, whatever the lawyer in the state

13   court case wants to do is up to him.  But what -- if you're

14   saying that by filing this foreclosure action without knowing

15   the transaction and the fact that it was a bogus transaction

16   you violated the Fair Debt Collection Practices Act.

17         MR. KLEINMAN:  Oh, it goes much further than that.

18         THE COURT:  Well, what -- you're missing the point.

19   You're missing the point.  You have your ammunition.  You're

20   loaded.

21         MR. KLEINMAN:  I'm loaded.

22         THE COURT:  You're ready to go.  Why not file a

23   summary judgment motion?

24         MR. KLEINMAN:  That's not a thing the defense lawyer

25   doesn't want to do at this juncture.

1          THE COURT:  Why should it matter what he wants to do

2    at all?  He's in a separate case.  He doesn't control what

3    happens here.  He hasn't made an appearance --

4          MR. KLEINMAN:  Correct.

5          THE COURT:  -- in what happens here.

6          MR. KLEINMAN:  In this case --

7          THE COURT:  So if we were to give you -- if I were

8    to say, you have until the end of this week to file a

9    premotion letter with Judge Vitaliano because it looks like

10   you have the information you need to move for summary

11   judgment, he would say, no, don't do it.

12         MR. KLEINMAN:  Correct.  And the reason I would

13   say --

14         THE COURT:  I would have no control over him.  Who

15   is this person?  Is it you?

16         MR. KLEINMAN:  No.

17         THE COURT:  All right.  You know --

18         MR. KLEINMAN:  Although I've been --

19         THE COURT:  And why doesn't he want to?  If -- why

20   doesn't he want to?

21         MR. KLEINMAN:  It's his position is that they'll

22   have a free home for a longer period of time.

23         THE COURT:  That's not a legitimate reason.

24         MR. KLEINMAN:  I don't deem it legitimate but it's

25   not my client in that case, but --

1        THE COURT:  But it's the same client as in this

2   case.

3        MR. KLEINMAN:  Correct.  They've elected an attorney

4   in state court who's frankly a better attorney than me in

5   those types of matters and he's kept them in their home and

6   the longer he does, the longer the foreclosure industry falls

7   apart.

8        THE COURT:  Interrogatory number three is fine.

9   Interrogatory number four is fine.  Interrogatory number

10  seven, information is better gleaned in a deposition.

11  Interrogatory number nine, better gleaned in a deposition.

12  Interrogatory number ten:

13       "State by year the number of persons who were sent

14  by Shapiro, Dicaro & Barak between August 12, 2009, and the

15  present complaints which claim JPMorgan Chase National

16  Association to be the creditor, which contained an assignment

17  of mortgage which contained the signature of Margaret Dalton

18  in her capacity as vice president of Mortgage Electronic

19  Systems, Inc., as nominee of First Financial Equities, Inc.

20  Identify each such person."

21       Well, why is this relevant to the case?  The

22  objection is that it's irrelevant in part.  Why is it

23  relevant?

24       MR. KLEINMAN:  Because they provide us assignment of

25  mortgage signed by Margaret Dalton for an entity that lost its

1  license for -- by a person who's been found to be incredible

2  by the Nassau County judge.

3           THE COURT:  And you're bringing -- your clients are

4  bringing this case as a purported class action.

5           MR. KLEINMAN:  They are.

6           THE COURT:  Is that -- all right.  That's what you

7  want to know.  You want to know if there's numerosity,

8  commonality, typicality, all that.  This is part of your class

9  discovery, correct?

10          MR. KLEINMAN:  Yes.  And mostly concerning Ms.

11 Margaret Dalton.  And as we see later in discovery they won't

12 say who Margaret Dalton works for.

13          THE COURT:  Why can't you answer this question

14 understanding that what they're getting at is part of their

15 class discovery?

16          MR. KENDRIC:  Your Honor, I've reviewed the

17 plaintiffs' complaint.  I don't see any allegation that bears

18 upon Margaret Dalton signing, robo signing.  Once again,

19 Mr. Kleinman speaks of a decision from a state Supreme Court.

20 He's misstating the decision in the sense that the Court did

21 not find Ms. Margaret Dalton to be incredible as a matter of

22 law.  He found that upon the -- that there was issues with

23 respect to the sufficiency of the papers presented, that he

24 could not -- that Judge Karen Murphy in the Supreme Court

25 could not grant foreclosure on the papers presented.

1          Again, I feel like this is a theme that counsel is

2   referring to other cases where I didn't represent the

3   defendant in these other cases.  I need to speak to this case

4   and let me speak to this case.

5          Number one, when we get to the point of depositions,

6   if counsel wishes to take depositions, he'll find out about

7   dates and he'll find out about whether Liz Dalton was employed

8   by whom and what have you.  And here's my point, Your Honor.

9   These assignment of mortgages -- and this is the point that I

10  wished to make with you -- these assignment of mortgages can

11  be thought of as bearer upons, bearer of documents.  They are

12  often supplied undated and they are supplied by -- they're

13  supplied by a lender to the next lending institution who

14  assumes responsibility for that mortgage.

15         These are -- if counsel wishes to question the

16  validity of these transfers, the authenticity of these

17  transfers, this is something which is to be litigated in the

18  foreclosure matter.  It's not a question, I don't think, for

19  this court.  I don't particularly see how when Margaret Dalton

20  signed this assignment of mortgage or whether it predated or

21  post-dated the original lender being a licensed New York state

22  banking institution has anything at all to do with this case

23  in which --

24         THE COURT:  Well, what it has to do is if, in fact,

25  it was a faulty assignment.  And then a law firm later files a

1  foreclosure action without verifying whether the mortgage --

2  the note was properly assigned, they're violating the Fair

3  Debt Collection Practices Act.

4        MR. KLEINMAN:  It may be a hint more nuanced than

5  that, Your Honor, because when the Sebrows received the demand

6  letter from Shapiro, Dicaro, LLP or Shapiro, Dicaro, LLC --

7  whichever they claim to be on that date -- they sent two

8  certified letters saying, I dispute this notion that JPMorgan

9  Chase is a creditor of mine.  In response to that they send

10  verification documents which are not reliable.  They're not

11  reliable because it's from Margaret Dalton.  They're not

12  reliable because it's from MERS.  They're not reliable from

13  First Financial Equities.  She's been found to be unreliable.

14  That's why because they continued to prosecute --

15        THE COURT:  Well, was she found to be not reliable

16  at the time they send the verification or subsequent because

17  if -- and I don't know that she was found not reliable is

18  really the issue.  It's whether they went back after the debt

19  was disputed or who the proper creditor is and said, well,

20  hey, we checked it.  We looked at everything and everything

21  lines up, everything was valid, everything was appropriate.

22        If they didn't go back and check, they've got a

23  problem.  If they went back and checked and made a mistake, I

24  don't know how that shakes out.

25        MR. KLEINMAN:  Well, they checked it out.  They

1  thought this was like any other consumer who's not armed in

2  the FDCPA and provided the usual types of documents that are

3  provided.  The problem with those documents are is they're

4  unreliable.  They're unreliable on their face.  They're

5  unreliable because counsel won't tell you who Margaret Dalton

6  works for after providing both counsel and the consumer with

7  the document saying who she works for.  She works for MERS

8  through First Financial.  So to have a discovery dispute six

9  months into the case saying, hey, the documents that you

10  provided in verification, who does that person -- who is that

11  signatory, I don't know.  You don't know?  You're prosecuting

12  a class action -- you're prosecuting a foreclosure predicated

13  on those documents.  You don't know?  How can you not know?

14  Could you find out possibly?  Why would I?  So there's --

15           THE COURT:  You'll get those -- I mean, you're going

16  to take the deposition, right?

17           MR. KLEINMAN:  But I -- that's the whole point of

18  this is I want these in advance of the deposition.  I want to

19  go to Ms. Margaret Dalton and say, how many hats do you wear,

20  and I also want to know why counsel can't find out who she

21  works for in advance of my deposition.

22           THE COURT:  Well, but this all -- this really gets

23  to the -- ignores the issue with interrogatory number ten.

24  Can you -- Mr. Kendric, can your client say how many people

25  fall within this class?  I mean, because this goes to the

1    class.   That's the way I see it, the size of the class.

2    Potential class because one hasn't been certified yet.

3              MR. KENDRIC:  Can my client -- I don't know, Your

4    Honor, but I'll find out --

5              THE COURT:  All right.

6              MR. KENDRIC:  -- in short order.

7              THE COURT:  I think that that should be answered.

8    Eleven is fine.  I mean, if they answered yes to this number

9    11, so I assume there is a letter of engagement.

10             MR. KENDRIC:  Your Honor, in a supplemental

11   production we supplied counsel with a redacted copy.  It's not

12   called --

13             THE COURT:  It's a letter of engagement.

14             MR. KENDRIC:  It's called something else.

15             THE COURT:  Right.

16             MR. KENDRIC:  It's a much more comprehensive

17   document and we had thought that the plaintiffs' attorneys

18   were disputing that Shapiro, Dicaro was even retained by the

19   bank.  And what we did was in order -- in an attempt I guess

20   to show that indeed they had been retained by the bank, we

21   supplied a redacted copy of the -- it's called a master

22   services agreement.

23             THE COURT:  Okay.  That's fine.  Twelve, thirteen

24   and fourteen look fine to me.  Seventeen is fine.  Eighteen is

25   fine.  Twenty is fine.  Twenty-one is fine.  Twenty-two,

17

1   "State whether the note at issue has been separated from the

2   mortgage."  Pardon my ignorance.  What does that mean?  I'm

3   not a closing attorney, never was, hopefully never will be. I

4   don't know what that means.

5           MR. KLEINMAN:  Both the note, Your Honor, and the

6   mortgage cannot become separated.  They have to travel in

7   tandem.

8           THE COURT:  Mmhmm.

9           MR. KLEINMAN:  And once they become separated,

10  they're no longer enforceable.  So the question is, were they

11  separated.

12          THE COURT:  Does your client know whether the note

13  and the mortgage were ever separated?  I know they've

14  answered, look, we are the owner of both.

15          MR. KENDRIC:  Not "we," Judge.  Not "we."

16          THE COURT:  Not your client.  The -- I'm sorry, I'm

17  sorry.  The bank.  You state the bank was the owner of both.

18          MR. KENDRIC:  Just saying that based upon

19  information and belief JPMorgan Chase was the beneficial owner

20  of both the note and mortgage at the time the subject

21  foreclosure complaint was filed.  So that is a long-winded way

22  of saying upon information and belief --

23          THE COURT:  They were never separated.

24          MR. KENDRIC:  No.  They were never separated, to our

25  knowledge.

18

1              MR. KLEINMAN:  Then in that case they would be able

2    to produce them.

3              THE COURT:  The note and the mortgage?

4              MR. KLEINMAN:  Yes.

5              THE COURT:  And they haven't been produced?

6              MR. KLEINMAN:  The word beneficial is weasel

7    language.  It's not, you have them, yes or no.  "Beneficial"

8    means I'm a beneficiary of something.  You have them.  It's

9    physical and that's what <u>Bank of New York v. Silverberg</u> is

10   really about.  Who are you to prosecute a case if you don't

11   have the note; you must have physical possession of the note.

12   So throughout <u>Bank of New York v. Silverberg</u> --

13             THE COURT:  That's -- but that's not what you asked.

14   I mean, I'm dealing with a specific interrogatory, "State

15   whether the note at issue has been separated from the

16   mortgage."  And based on the answer that we have to the

17   interrogatory and Mr. Kendric's assertion which is binding on

18   his client, the note and the mortgage were never separated.

19   Whether they have them, physical possession of them is a

20   separate issue.  I assume that you've asked for them to be

21   produced.

22             MR. KLEINMAN:  If I haven't, I shall.

23             THE COURT:  Okay.  All right.  Twenty-three looks

24   fine to me.  Twenty-four looks fine and twenty-five look fine.

25   Deal with the interrogatories.  And I'm -- where is the -- I

1   mean, request for production.  Excuse me.  Number three.  What

2   more would there be other than the note and the mortgage to

3   indicate transfers of the rights and the alleged debt from one

4   entity to another?  I assume there would be assignments.

5          MR. KLEINMAN:  There'd be assignments and there'd be

6   money.  Ready to go.  For what consideration?  Why would

7   anyone want a defaulted mortgage?  Would that violate the duty

8   of a trustee not to take garbage?  Who would want such an

9   asset?  It's worthless.  Not collecting on it.  And the

10  assignments would probably show who the real owner of the

11  mortgage is, which would be either Freddie Mac or Fanny Mae.

12         THE COURT:  You haven't gotten the assignments yet?

13         MR. KLEINMAN:  I have the assignments of Ms.

14  Margaret Dalton.  That's the assignment I have.  And then I

15  have one from when I moved to JPMorgan Chase.  The problem --

16         THE COURT:  So the assignment -- the assignment from

17  First Equities, which was is the originator, correct?

18         MR. KLEINMAN:  Mmhmm.

19         THE COURT:  Goes to WaMu?

20         MR. KLEINMAN:  Goes to WaMu undated.

21         THE COURT:  And then there's one from WaMu to

22  JPMorgan.

23         MR. KLEINMAN:  Correct, but it appears that they've

24  already given from WaMu to JPMorgan what's already been given

25  elsewhere.  So the bottom line is --

1          THE COURT:  So wait, wait, wait.  So it went from --

2   so when WaMu transferred the interest -- assigned the interest

3   in the note and the mortgage to JPMorgan they assigned that to

4   someone else, too, or --

5          MR. KLEINMAN:  No.  I think it was already gone.

6          THE COURT:  -- another enti --

7          MR. KLEINMAN:  There was nothing to assign any

8   longer.

9          THE COURT:  Why do you say it was "already gone"?  I

10  don't -- I'm not sure what that means.

11         MR. KLEINMAN:  I think it's already been assigned at

12  that time.

13         THE COURT:  It was assigned to?

14         MR. KLEINMAN:  See if we can pull it up, Your Honor,

15  if I can have a moment.  The assignment of mortgage from MERS

16  for First Financial to JPMorgan Chase was on March 27, 2010.

17         THE COURT:  So it goes from First Financial to

18  JPMorgan on March 27, 2010?

19         MR. KLEINMAN:  From MERS as nominee for First

20  Financial Equity.

21         THE COURT:  Okay.  All right.

22         MR. KLEINMAN:  On that date.  Then we're given

23  another document that will show that it's been given elsewhere

24  on an undated date.  So can you give something away that you

25  don't have?

1          THE COURT:  And that other assignment on an undated

2    date is from MERS as nominee for First Financial to whom?

3          MR. KLEINMAN:  I don't want to speak out of turn --

4          THE COURT:  Okay.

5          MR. KLEINMAN:  -- without having the document, Your

6    Honor.  I don't want to give a mis-impression to the Court,

7    but there are two assignments here.

8          THE COURT:  Okay.

9          MR. KLEINMAN:  And that assignment suddenly appears

10   and that's the note itself and the note goes from Washington

11   Mutual to Washington Mutual undated.  So it's without recourse

12   paid to order of Washington Mutual Bank, F.A., First Financial

13   Equities, Inc., Robin J. Beck [Ph.], V.P., made to the order

14   of WM.

15          So the question remains --

16          THE COURT:  And that was part of -- that was

17   attached as an exhibit to the foreclosure or something?

18          MR. KLEINMAN:  It was provided in verification.

19          THE COURT:  All right.

20          MR. KLEINMAN:  So they're providing verification

21   of --

22          THE COURT:  Could I see that?

23          MR. KLEINMAN:  Please.  If I may approach.

24          THE COURT:  So this is the note itself.

25          MR. KLEINMAN:  Correct.  And the beauty of it is

1   that it's undated so you can play with it as you like.  The

2   assignment of the mortgage from First Financial Equities to

3   JPMorgan we know happened on March 27, 2010.  So the

4   $64,000.00 question if I don't date myself with the question

5   is, when did that occur.

6             THE COURT:  All right.  So hold on.  This note

7   was -- it bears the signature of your clients.

8             MR. KLEINMAN:  It does.

9             THE COURT:  I assume they signed this at the

10  closing.  Sometime subsequent to the closing this was assigned

11  from First Financial --

12            MR. KLEINMAN:  To JPMorgan.

13            THE COURT:  Well, you said WaMu.  Hold on.

14            MR. KLEINMAN:  This will be -- if I may -- the

15  assignment of mortgage.

16            THE COURT:  Okay.  Have this right here.  Okay.  No,

17  but you said -- but you said that there was an assignment from

18  WaMu to WaMu.

19            MR. KLEINMAN:  Well, that's how that reads.

20            THE COURT:  That's how the note reads?

21            MR. KLEINMAN:  Yes.  On the bottom left-hand corner.

22  "Without recourse paid to the order of WaMu, First Financial."

23            THE COURT:  All right.  So you're saying that First

24  Financial assigned this note because of this without recourse

25  paid to the order of to WaMu.

23

1          MR. KLEINMAN:   That's correct.

2          THE COURT:   So then it could not later -- MERS as

3    First Financial's nominee could not then later assign it to

4    JPMorgan Chase?

5          MR. KLEINMAN:   Can't settle the same dollar bill

6    twice.

7          THE COURT:   When was the closing?

8          MR. KLEINMAN:   I couldn't tell you with accuracy,

9    Your Honor, today.

10          THE COURT:   Do you know who -- Mr. Kendric, does --

11    do you know who -- what the import of this "without recourse

12    paid to the order of WaMu"?

13          MR. KENDRIC:   I do not.

14          THE COURT:   Okay.  If, in fact, First Financial

15    Equities, Inc., had already assigned this note through this to

16    someone else or sold it, they couldn't then sell it to

17    JPMorgan Chase.

18          MR. KENDRIC:   Judge, let me speak.  Let me speak.

19          THE COURT:   Unless they got it back somehow.

20          MR. KENDRIC:   Let me speculate, Judge.

21          THE COURT:   Sure.

22          MR. KENDRIC:   My speculation is, as is common in the

23    banking industry, larger banks always buy up smaller banks,

24    let me speculate that JPMorgan Bank N.A. purchased Washington

25    Mutual.  I can't stand before you and say that is a fact, but

24

1 that's some -- that's my speculation, sir, so it wouldn't be a

2 question of an assignment to one and then having nothing left

3 to assign to another.

4      THE COURT:  But the point of this, these two things,

5 vis-a-vis this lawsuit is that when the foreclosure action was

6 filed, it wasn't checked out and later -- and when it was

7 verified, these documents were in the record and they

8 didn't -- they ignored them or didn't follow-up on them to

9 make sure that their client -- the law firm's client actually

10 owned the note and mortgage.

11      MR. KLEINMAN:  Slightly different.  I have to

12 dispense with any notion that Shapiro, Dicaro is the law firm

13 for JPMorgan Chase.  I take the liberty on a pro bono basis to

14 go to every state court appearance and I asked Mr. Dicaro and

15 I asked all the per diem attorneys if they represent JPMorgan

16 Chase and their answer is, "I will not answer that question."

17 So it's not their client.  These cases come from middle men,

18 nothing to do with JPMorgan Chase.  If they did they'd give me

19 a retainer and they have no retainer.  If they did they'd give

20 me a letter of engagement.  There is no letter of engagement.

21      THE COURT:  But you have this master services

22 agreement?

23      MR. KENDRIC:  Correct, Judge.

24      MR. KLEINMAN:  It's a two-page master services

25 agreement I've been given out of, I don't know, 60 or 80

1  pages.  Everything else has been redacted.  I have no idea

2  what it is.  No one can discern what it is.  But to answer

3  Your Honor's question is that the Sebrows are sophisticated

4  through their long history of the Fair Debt Collection

5  Practices Act.  It's there on PACER.  It's not going away.

6  When they got their foreclosure complaint it had the 30-day

7  notice in it so they took full advantage of it.  They said,

8  "We dispute the notion that JPMorgan Chase is our creditor and

9  we dispute the notion that you've been retained and we dispute

10  that you have verified this complaint because you said in your

11  verification that JPMorgan Chase is not in Rochester and

12  that's why the attorney has verified the complaint when, in

13  fact, JPMorgan Chase -- isn't one JPMorgan Chase center in

14  Rochester."  So they disputed the debt.

15          Better attorneys than Shapiro, Dicaro would have

16  said, oh-oh, we have a sophisticated consumer here, but they

17  couldn't control themselves.  They went and took these phony

18  documents and tossed it to the Sebrows and then prosecuted the

19  action before they could even get the verification to them.

20  That's how rabid they are.  Even when they see a sophisticated

21  dispute they continue with the prosecution.  That's the claim.

22  Even before they verified the debt they went and hauled them

23  into Queens court.  That's the claim.

24          They're unstoppable knowing full well that this

25  couldn't be the creditor, that every document that you've

1   proffered in this case and their defense to the case is a *bona*
2   *fide* error, that when Mr. Chatwin [Ph.] verified this
3   complaint saying the reason he verified it is because JPMorgan
4   Chase is not in Rochester, they say it was a *bona fide* error.
5   And at the very initial conference that we appeared and Mr.
6   Kendric didn't have the opportunity to appear because there
7   was other counsel involved, they told us and they told the
8   Court that the reason -- there was another reason why Mr.
9   Chatwin verified this complaint.  It wasn't like he stated
10  that JPMorgan Chase isn't in Rochester.  There's a different
11  reason.  And I can short-circuit this all by admission number
12  16.  I ask, demand 16, "Admission that officers of JPMorgan
13  Chase Bank N.A. do not sign the complaint verification when
14  Shapiro, Dicaro & Barak are the attorneys of record."
15          Response, objection.  "Plaintiffs' request to admit
16  is completely relevant."  So the question of the day is, what
17  was the error that Mr. Chatwin made in verifying the complaint
18  because what I read in admission number 16 response is that
19  whenever Shapiro, Dicaro files a foreclosure complaint,
20  Shapiro, Dicaro signs the verification.  So what is the error?
21  What could possibly be the error?  And no one will enunciate
22  the error.
23          THE COURT:  Did -- Mr. Kendric.
24          MR. KENDRIC:  Yes.
25          THE COURT:  Has your client produced all of the

1  documents it has in its possession, custody or control

2  concerning the Sebrows' account, the closing, the mortgage,

3  the note, any assignments, any documents that tracks the paper

4  from origination to when it'd got in JPMorgan Chase's hands

5  and then the foreclosure action was filed?

6         MR. KENDRIC:  Your Honor, with respect to the

7  Sebrows and not speaking about other actions, which we've

8  discussed already earlier in the conference, with respect to

9  the Sebrows it is my belief, as their attorney, and they have

10  turned over all of their documents to me and that I have

11  turned over all the documents -- or my predecessor did to

12  plaintiffs' counsel.  There's a lot -- I mean, I don't know

13  if -- I don't know if the Court is interested in me addressing

14  all the hyperbole.  There's a lot of assumptions, a lot of

15  forceful assertions but, you know, the documents say what they

16  say and if they need any clarification I trust the counsel

17  will ask about them at the time of depositions.  I'm trying to

18  play by the rules, Your Honor.  I'm trying to give plaintiffs'

19  counsel what he's entitled to.  I'm trying not to lay down on

20  my client and just -- and just let him turn this matter into a

21  free-for-all discovery for his clients' foreclosure matter.

22        What we're here to discuss, I had thought, Judge,

23  was whether Shapiro, Dicaro had somehow deceived or duped the

24  Sebrows when they sent them the collection letters.

25        THE COURT:  Well, but part of that is -- part of

1   that is what -- you know, the underlying deal and the

2   documents because the Sebrows did request clarification and if

3   your client didn't verify it, it violated the Fair Debt

4   Collection Practices Act.

5           MR. KENDRIC:  But --

6           THE COURT:  So I mean, that's what -- you know, what

7   I'm concerned with.  And I want to make sure all the documents

8   that exist have been produced, that the appropriate deponents

9   are deposed and asked whatever questions and we get to the

10  bottom of this.  I mean, if you, Mr. Kleinman, have a set of

11  documents that Mr. Kendric produced.

12          MR. KLEINMAN:  I do, Your Honor.  And in a lot of

13  ways I'm in agreement with what Mr. Kendric just said.  So we

14  have a foreclosure complaint filed by Shapiro, Dicaro.  It

15  contains a verification in it.  The verification says that

16  Shapiro, Dicaro signed verification because JPMorgan Chase is

17  not in Rochester.  That was my lawsuit, a big part of the

18  lawsuit.  So we're told that was in error.  So I'm just trying

19  to ascertain with admission number sixteen, okay, what was the

20  error?  What did they want to do?  What did they intend to do?

21  We all make errors.  We don't do it on verifications that

22  often, but we'll give them that.  They made an error

23  on represent --

24          THE COURT:  [Sneezes.]

25          MR. KLEINMAN:  Bless you.

1          THE COURT:  Excuse me.  But they answered demand

2  number 16.

3          MR. KLEINMAN:  No.

4          THE COURT:  Request for admission, number sixteen?

5          MR. KLEINMAN:  Objection.  Completely irrelevant.

6          THE COURT:  "Notwithstanding and without waiving

7  such objection defendants admit that insofar as a foreclosure

8  complaint prepared and served upon them" -- excuse me --

9  "served by them upon plaintiffs' herein is concerned, JPMorgan

10 Chase National Association did not sign the verification

11 corresponding to such complaint."

12         So they admitted it.

13         MR. KLEINMAN:  No.  The rationale behind the

14 question, Your Honor, is that what was the *bona fide* error in

15 Mr. Chatwin's --

16         THE COURT:  But that's not what you asked.  You

17 said, "Officers of JPMorgan Chase Bank National Association do

18 not sign" -- oh, I see -- "do not sign the complaint

19 verification when Shapiro, Dicaro & Barak are the attorneys of

20 record."

21         MR. KLEINMAN:  Right.  So it's not --

22         THE COURT:  And they flipped it and said, did not

23 sign this particular verification.

24         MR. KLEINMAN:  Right.

25         THE COURT:  So ask Mr. Shapiro, if you're going to

1  depose him, about other -- you know, what is the standard

2  practice.

3          MR. KLEINMAN:  I think that was the basis of the

4  admission and they -- and that's what it is.  The answer is

5  no.  Shapiro, Dicaro signs it, so it's not a *bona fide* error,

6  so their entire *bona fide* error goes out the window.

7          THE COURT:  You're arguing merits.  I mean, I'm

8  not -- and what the implication of a particular response is.

9  You know, that's not my purview.  My purview is whether this

10 response is sufficient and it was partially responsive.

11         And let me ask you, Mr. Kendric.

12         MR. KENDRIC:  Yes.

13         THE COURT:  Does -- is there a standard practice

14 when JPMorgan Chase is concerned and foreclosures are brought

15 by Shapiro, Dicaro & Barak on who signs the verification?

16         MR. KENDRIC:  Unaware, Judge.  I'll look through

17 that master services agreement.  I rather doubt it's going to

18 be in there and I'll confer with the client.

19         THE COURT:  Whoever is deposed better be prepared to

20 answer that question.

21         MR. KENDRIC:  Yes, sir.

22         MR. KLEINMAN:  In that vein, Your Honor, I think

23 we're going to need a six-month extension on the discovery to

24 name new entities and to name the partners of Shapiro, Dicaro

25 and to get some depositions done.

1          [Pause in the proceedings.]

2          THE COURT:  Looks like we've already extended

3    discovery twice.  Twice there -- okay.  I can't get access to

4    Lotus notes, Miriam.  Never mind.

5          I assume, Mr. Kendric, you have no objection.

6          MR. KENDRIC:  I don't know that we need six months,

7    Your Honor.

8          THE COURT:  Yeah.

9          MR. KENDRIC:  But this is what I do know, sir.

10   August 9, 2011, we served plaintiff's counsel with a demand

11   for interrogatories and a demand for document production.

12   That was the due date for those responses was originally

13   September 12 extended by agreement between counsel to October

14   12.  So if that aids the Court in making up its mind in terms

15   of whether we need more time, I have not even received

16   plaintiffs' initial discovery responses yet.

17         THE COURT:  Okay.  April 27th.  No further

18   extensions under any circumstances.  Better get moving if you

19   want this to be a class action.  You'd better do all your

20   class discovery, get everything done.  I am denying the motion

21   in large part because I think a lot of what has been asked is

22   more appropriately dealt with in a deposition.  Whoever comes

23   prepared -- whoever is deposed better be able to answer

24   questions.  If they're not, then we're going to have problems.

25         Keeping in mind that this is a purported class

1   action and, you know, refusing to answer a question because it

2   goes beyond the Sebrows' particular dispute is not going to be

3   sufficient, not going to be acceptable.  At -- you know, what

4   the plaintiffs are getting at is the standard practice of the

5   firm when JPMorgan is the client and I think they're entitled

6   to ask questions along those lines.

7          When is the next conference, Miriam?  Looks like it

8   should be around January 23rd.  January 26th.  All right.

9   We're going to keep that conference and we're going to add one

10  for the first week of May.

11          THE CLERK:  Do you want me to look?

12          THE COURT:  Yes.

13          THE CLERK:  I'm sorry.

14          THE COURT:  It's okay.

15          THE CLERK:  May 1st.

16          THE COURT:  Sounds good.

17          THE CLERK:  Ten o'clock.

18          THE COURT:  May 1st, ten o'clock.  All right.

19          MR. KLEINMAN:  One last item, Your Honor.

20          THE COURT:  Sure.

21          MR. KLEINMAN:  Prior to the conference Mr. Kendric

22  offered me a ride back.  I want to make sure that's still in

23  force.

24          THE COURT:  That's -- I'll leave that up to you

25  folks.

33

1          MR. KENDRIC:  All right.  Thanks very much.

2          MR. KLEINMAN:  Thanks.

3          MR. KLEINMAN:  Thank you, Judge.

4             (Proceedings concluded at 11:07 a.m.)

5                        *  *  *  *  *

34

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4

5

6     _____

7          Ruth Ann Hager, C.E.T.**D

8     Dated:    January 12, 2012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25